UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES M. NEWMAN,

Petitioner,

-vs-                                                    Case No.  8:05-cv-315-T-24EAJ

SECRETARY,   DEPARTMENT   OF
CORRECTIONS,

Respondent.

_____

## ORDER

This cause is before the Court on Petitioner James M. Newman's 28 U.S.C. § 2254 petition for writ of habeas corpus. Newman challenges his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

Newman was charged by amended information with four counts of sexual battery pursuant to Florida Statute, section 794.011(3) and Florida Statute, section 794.023.

THE TRIAL PROCEEDINGS

Reed's Testimony at Trial

Teresa Reed testified that she moved to Florida in September 1997 with a friend, Daniel Richie. Shortly thereafter, Richie was involved in an automobile accident and was hospitalized. After Richie was released from the hospital, Reed and Richie went to live in a Tampa shelter known as the Manna House. While living at the Manna House, they met an individual known as "Cactus Jack."

On November 4, 1997, Reed was doing laundry while Richie sat on a bench outside Manna House. She testified that Richie was using a metal walker at this time due to his

injuries. After Reed finished the laundry, Reed and Richie began drinking beer with Cactus Jack and three of his friends.  Reed identified Newman as one of these friends. Subsequently, the group left the Manna House in Newman's vehicle.

Reed testified that Newman drove the group to the Palmetto Beach area and they continued to drink beer.  After drinking approximately five beers, Reed lay down in the back seat of the car.  Richie opened the back door of the car and sat down.  Reed then heard Richie yell, "Stop."  Reed testified that she tried to get out of the car and Newman hit her in the face. She testified that Newman dragged her out of the car while Cactus Jack began jumping on Richie.  Reed testified that Newman held her while a "young guy" began taking off her pants. She testified that after her clothes were removed, Cactus Jack raped her against her will.  Reed claimed that while this was happening, Newman attempted to stick his penis into her mouth. After Cactus Jack had raped her, the "young guy" raped her.

After this, Reed got back into the vehicle with the three individuals.  She testified that Newman continued to try to get her to perform oral sex on him.  She testified that she told the men she had to urinate and was allowed to get out of the car.  She then began running toward the highway.

On cross-examination, Reed conceded that she had actually drunk about eight beers while at the beach.  She also admitted that no weapon, such as a gun or knife, was involved in the incident.

<u>Richie's Testimony at Trial</u>

Richie testified that he would get together with Cactus Jack and Reed almost every day while at the Manna House.  They [including Reed] were asked to leave the Manna House on November 4, 1997, because they were drinking beer on the property.  They left in a vehicle

driven by Newman.  They drove to the beach and continued drinking.  After a while, Reed got into the back of the car to go to sleep.  Richie went to check on her and was pulled from the car by Cactus Jack.  Cactus Jack hit him in the face and then threw his walker about 20 to 30 feet away.  Cactus Jack retrieved the walker and began hitting Richie with it.  Richie testified that Newman punched Reed in the face and dragged her out of the car.  Richie claimed that Cactus Jack pulled off Reed's pants.  Cactus Jack then returned to Richie and beat him again.  Richie thought he lost consciousness at least twice.

When he recovered consciousness, Richie saw Cactus Jack with his pants down on top of Reed.  He stated that Newman was "groping" Reed at this time.   Richie was again beaten by Cactus Jack until he lost consciousness.  When he woke up, he saw Reed and the three men in the car.  He could not see what was occurring in the car.  Shortly thereafter, Reed got out of the car and began running to the highway.

### Officer Juan Santos' and Officer Jeffrey McGrath's Testimony at Trial

Officer Santos testified that he was patrolling Palmetto Beach on November 4, 1997. He was flagged down by a motorist and subsequently came into contact with Reed near the shrimp docks.  Reed stated that she had just been raped and beaten.  Santos went  to the beach where he found Richie lying on the ground badly beaten.  Santos immediately called for backup.

Officer McGrath testified that he responded to a call on Causeway Boulevard.  When he arrived, he interviewed Reed, and Richie was transported to the hospital.   McGrath apprehended three suspects:  Arthur Girdler, Edwin Goodwin, and Newman.  Reed identified these individuals as the persons who attacked her.

### Shirley Williams' Testimony at Trial

Williams, a licensed registered nurse practitioner for the Hillsborough County Rape Crisis Center, testified that she examined Reed on November 4, 1997.  Her examination revealed a black eye, red marks over her neck and shoulders, and scratch marks around her neck area. Williams testified that she administered an "Acid Phosphatase Presumptive Screening" test that was positive for semen in Reed's vagina.  The oral and anal results from this test were negative.

### Robert Graves' Testimony at Trial

Graves testified that he was incarcerated in the Hillsborough County Jail with Newman. During this time, he talked to Newman about Newman's charges.  Graves claimed that Newman told him that he had to slap Reed to have her perform oral sex with him.  Graves also claimed that Newman discussed what defenses he might have to these charges.  One of the possible defenses was that Newman could have passed out in the car drunk.

### Judgment of Acquittal

Defense counsel moved for a judgment of acquittal on the ground that there was insufficient evidence of serious bodily injury.  The state trial court denied the motion without explanation.

### Newman's Testimony at Trial

Newman testified that he met Cactus Jack for the first time on November 4, 1997. Newman stated that he started drinking that morning about 9:00 a.m. He then went to the Manna House in the early afternoon.  While there, he met Reed, Richie, and Cactus Jack. They eventually left the Manna House in Newman's car and drove to the causeway.  They continued drinking on the beach.  While there, they met a man and a woman in a boat.  Newman testified

-4-

that Reed went out on the boat with the man.  Newman did not know when she returned because he became sick shortly after she left.  He then fell asleep in the front seat of the car.  He was awakened by Cactus Jack and told that they had to leave.  He denied that he ever struck Reed or had any sexual contact with her.

Renewed Motion for Judgment of Acquittal

After the defense rested, counsel renewed the motion for judgment of acquittal.  The state trial court against denied the motion without explanation.  After deliberating for approximately two hours, the jury found Newman guilty of three counts of sexual battery, multiple perpetrators, and not guilty as to the fourth count of sexual battery.

PROCEDURAL BACKGROUND FROM THE RECORD

On April 27, 1998, Newman, and co-defendants Arthur Girdler and Edwin Goodwin were charged by amended information 97-17970 with the following offenses:

Ct. 1: JAMES MICHAEL NEWMAN AND ARTHUR LEE Girdler AND EDWIN GOODWIN, on the 4th day of November, 1997, in the County of Hillsborough and State of Florida did during the same criminal transaction or episode, unlawfully and feloniously commit sexual battery upon TERESA REED, a person twelve (12) years of age or older, without the consent of TERESA REED, by penetration of and/or union with the vagina of TERESA REED by the penis of EDWIN EUGENE GOODWIN and in the process thereof used or threatened to use actual physical force likely to cause serious bodily harm.

Ct. 2: JAMES MICHAEL NEWMAN AND ARTHUR LEE GIRDLER AND EDWIN GOODWIN, on the 4th day of November, 1997, in the County of Hillsborough and State of Florida did during the same criminal transaction or episode, unlawfully and feloniously commit sexual battery upon TERESA REED, a person twelve (12) years of age or older, without the consent of TERESA REED, by penetration of and/or union with the vagina of TERESA REED by the penis of ARTHUR LEE GIRDLER and in the process thereof used or threatened to use actual physical force likely to cause serious bodily harm.

Ct. 3: JAMES MICHAEL NEWMAN AND ARTHUR LEE GIRDLER AND EDWIN GOODWIN, on the 4th day of November, 1997, in the County of Hillsborough and State of Florida did during the same criminal transaction or episode, unlawfully

-5-

and feloniously commit sexual battery upon TERESA REED, a person twelve (12) years of age or older, without the consent of TERESA REED, by penetration of and/or union with the mouth of TERESA REED by the penis of JAMES MICHAEL NEWMAN and in the process thereof used or threatened to use physical force likely to cause serious bodily harm.

Ct. 4: JAMES MICHAEL NEWMAN AND ARTHUR LEE GIRDLER AND EDWIN GOODWIN, on the 4th day of November, 1997, in the County of Hillsborough and State of Florida did during the same criminal transaction or episode, unlawfully and feloniously commit sexual battery upon TERESA REED, a person twelve (12) years of age or older, without the consent of TERESA REED, by penetration of and/or union with the mouth of TERESA REED by the penis of JAMES MICHAEL NEWMAN and in the process thereof used or threatened to use physical force likely to cause serious bodily harm.[1]

(Ex1/V1/R31-38)[2]

On April 28, 1998, a jury found Newman guilty of three counts of sexual battery (multiple perpetrators).[3] The jury found Newman not guilty of count four (Ex1/V5/R812-814; Ex1/V5/T179-180). On June 4, 1998, the state trial court sentenced Newman as a habitual violent felony offender[4] to concurrent life sentences on all three counts. He was also designated a sexual predator. (Ex1/V1/R55-68) (Ex2/T195).

Newman appealed, contesting the legality of his sentences to life imprisonment as a habitual violent felony offender. (Ex3/Briefs filed on original direct appeal). On July 9, 1999, the

---

[1] Co-defendant Edwin Eugene Goodwin was also charged with an additional count of aggravated battery allegedly occurring on the same date, the victim being Daniel Ritchie [Reed's boyfriend] by causing great bodily harm, permanent disability or permanent disfigurement by using a deadly weapon, an aluminum walker (Ex1/V1/R35).

[2] Respondent filed the record on appeal from the denial of the Newman's post-conviction motion as Exhibit 1.This record includes the original trial transcript . Citations thereto shall be noted as "Ex1/V /R" except for transcripts which will be cited as "Ex1/V /T."

[3] These convictions for sexual battery (multiple perpetrators), were lesser included offenses of counts 1, 2, and 3.

[4] The sentencing documents incorrectly reflect that the Newman was sentenced as a habitual felony offender when, in fact, he was orally sentenced as a habitual violent felony offender.

state district court of appeal, in Newman v. State, 738 So.2d 981 (Fla. 2d DCA 1999) reversed the sentences, finding that the sexual batteries were second degree felonies that could only be enhanced, because of his habitual offender status, to first degree felonies. Newman's maximum sentence as to each count could be only 30 years incarceration.  However, the state district court of appeal stated that, under the sentencing guidelines, the state trial court had the discretion to sentence Newman to life imprisonment because Newman's point total was 486.6. The state district court of appeal issued its mandate on July 29, 1999 (Ex1/V70).

On October 27, 1999, the state trial court resentenced Newman under the guidelines to concurrent life imprisonment sentences (Ex1/V1/R101-111). Newman appealed on November 9, 1999, attacking the legality of scoring out-of-state prior convictions because 1) they had not been properly proven; and  2) they were uncounseled convictions. (Ex4/Briefs filed on appeal after resentencing). While the appeal of the resentencing was pending, Newman filed a pro se petition for writ of habeas corpus in the state district court of appeal, raising four grounds of ineffective assistance of appellate counsel (Ex.5).[5]

The state district court of appeal denied the petition for writ of habeas corpus on February 1, 2000. Newman v. State, 754 So.2d 38 (Fla. 2d DCA 2000) (Ex.6/opinion denying petition for writ of habeas corpus).

On March 21, 2001, the state district court of appeal, in Newman v. State, 782 So.2d 462 (Fla. 2d DCA 2001) [mandate issued August 6, 2001] (Ex1/V1/R151-154) denied Newman relief on his appeal from the resentencing. The state district court of appeal determined that although some of his prior convictions were improperly scored, the error was harmless because even

---

[5]  The document was furnished to Respondent by Newman pursuant to this Court's June 6, 2005 order.

with the removal of all contested prior convictions, Newman's point total of 396 points exceeded the 363 points required to justify a life sentence. The state district court of appeal further determined that the state trial court did not err in scoring victim injury points for multiple perpetrators because Newman was charged as a principal on each count. However, the state district court of appeal remanded the case to the state trial court to correct the scoresheet so as to delete the improperly-scored convictions. On May 8, 2001, the state trial court, pursuant to the remand, entered a corrected scoresheet (Ex1/V1/R155-156).

On May 10, 2001, Newman filed a pro se motion for post conviction relief (Ex1/V1/R157-204) with a memorandum of law in support (Ex1/V1/R205-243); (Ex1/V1/R244-288 [Memorandum in Support]). Newman raised nineteen grounds for relief. On May 3, 2002, the state trial court summarily denied grounds 2, 4, 5, 6, 7, 9, 13, 14, 15, 16, 18 and 19 and ordered a response from the State on grounds 1, 3, 8, 10, 11, 12 and 17.

**The order reads, in pertinent part, <u>as to the claims that were summarily denied</u>:**

<u>**Issue 2**</u>

<u>**Counsel Failed To Move for Continuance To Compensate
for Relying upon the State To Produce Witness
with Favorable Testimony to the Defense.**</u>

**In support of this issue, Defendant maintains that counsel should have sought a continuance once counsel realized that the State was not going to call Corporal Gene Strickland as a witness.**

**The Court does not find a deficiency, per se, in counsel failing to move for a continuance, and Defendant has failed to affirmatively prove prejudice in failing to seek a continuance. Defendant is not entitled to relief upon issue 2.**

<u>**Issue 4**</u>

**Counsel Failed to Object to Prosecutorial Misconduct
of Entering Into Evidence Knowingly Perjured Testimony.**

In support of this issue, Defendant maintains that both the defense counsel and the prosecutor knew through police interview reports and discovery depositions that the testimonies given by Ms. Reed and Daniel Richie were not consistent with their original statements, and contradicted each other, thereby constituting perjured testimony pursuant to Florida Statutes, sections 837.02 and 837.021.

This Court finds no deficiency on the part of counsel for failure to object to the State's alleged misconduct, as Defendant has failed to demonstrate that the State committed misconduct. As such, Defendant is not entitled to relief upon issue 4.

**Issue 5**

**Counsel Rendered Ineffective Assistance of Counsel
By Failing To Motion for Disqualification When Defendant
Explained Legitimate Fear of Not Receiving a Fair
Trial from Presiding Judge.**

In support of this issue, Defendant contends that counsel was ineffective for not moving the Court for a disqualification of the trial judge based upon a legitimate fear that Defendant was not going to receive a fair trial.

In reviewing Defendant's allegations in issue 5, the Court finds that they are facially insufficient. Furthermore, Defendant has not demonstrated that he did not receive a fair trial. As such, Defendant is not entitled to relief upon issue 5.

**Issue 6**

**Counsel Failed To Object To Four Different Discovery Violations,
Which Deprived Defendant of Due Process and Handicapped
the Defense.**

Under issue 6, Defendant presents four instances in which defense counsel failed to object to discovery violations. Defendant alleges in instance 1 that a discovery violation occurred after the Court ordered blood removed from Defendant for DNA analysis. Blood was subsequently drawn from Defendant. Defendant maintains that the State failed to make available

the results from this test, which constitutes a discovery violation of substantial significance since it could have established his innocence.

Defendant must prove the following to substantiate his <u>Brady</u> claim: (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. <u>Brady v. Maryland,</u>, 373 U.S. 83 (1963); see also <u>Hegwood v. State</u>, 575 So. 2d 170, 172 (Fla. 1991).  Here, Defendant fails to demonstrate that the State committed a <u>Brady</u> violation, since the evidence in questions related to Defendant's own blood.  As such, he fails to demonstrate that he does not possess the evidence nor could he obtain it himself with any reasonable diligence.  Based upon the foregoing, Defendant is not entitled to relief on instance 1.

In instance 2, Defendant alleges that a discovery violation occurred when upon cross-examination of the State's witness, defense counsel questioned the witness about his observation of Defendant raping his girlfriend, in which the witness responded that the prosecutor told him not to say that.  Defendant argues that this statement demonstrates collusion on the State's part, but also shows a substantial and deliberate change of testimony that constitutes a discovery violation.

Upon review of this allegation, the Court finds that this does not constitute a wilful discovery violation.  As such, Defendant is not entitled to relief upon instance 2.

In instance 3, Defendant alleges that a discovery violation occurred when the alleged victim testified in court that she had bitten Defendant's penis.  Defendant maintains that this came as a complete surprise to Defendant as well as defense counsel, as Ms. Reed had not previously claimed to have inflicted any physical damage to Defendant.

Upon review of this allegation, the court finds that this does not constitute a discovery violation.  Defendant testified as follows:

Q. What was Mr. Newman doing at this time?

A. Well, he was kneeling on the side of me trying to stick his penis in my mouth.  I was trying to fight.  And I think I bit him on the penis.

Q. Just take your time.  Okay?

A. And then I remember looking over at Danny and he wasn't moving. And then when Cactus Jack was done, he got up and he had mentioned that it was good.

(See Trial Transcript, p. 28, attached).

The statement as testified to by the alleged victim is not definitive, as she indicates that she "thinks" she bit Defendant on the penis.  This statement together with all her other testimony was presented to the jury, and it was the jury's function to sort out of [sic] the statements of the alleged victim and all the other witnesses.  The Court does not find that this statement made by the alleged victim rises to the level of a discovery violation.  As such, Defendant is not entitled to relief upon instance 3.

In instance 4, Defendant alleges that a discovery violation occurred when the State produced witness Shirley Williams, who failed to show up for any discovery deposition.  Defendant alleges that he had no idea as to the context and extent of what this testimony was going to involve.

Upon review, the Court finds that the State provided the defense with notice prior to trial that it was going to call Ms. Shirley Williams as a witness. (See Notice of Discovery, attached).  As such, Defendant is not entitled to relief upon instance 4.

Based upon the foregoing, Defendant is not entitled to relief [on] issue 6.

## Issue 7

### Counsel Failed To Object to Prosecution's Use of Testimony of Not Present Witness Violating Defendant's Confrontation Rights and Thereby Presenting Prosecutor as Witness Against Accused with Unsworn Testimony.

In support of this issue, Defendant alleges that his constitutional right to confrontation was violated when upon cross-examination by the State, the prosecutor used testimony of Detective Jerry Herren of the Tampa Police Department to establish to the jury that Defendant's state of mind at the time of the arrest was coherent.

Courts have long recognized that the truth-seeking purpose of the adversary system is promoted by cross-examination which appropriately

challenges the witness's credibility through eliciting testimony favorable to the cross-examining party.  <u>Robertson v. State</u>, 780 So. 2d 106, 109 (Fla. 3d DCA 2001). Specifically, with regard to impeachment cross-examination, prosecutors are allowed "wide leeway" in order to prevent defendants from being able to "frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge." <u>Id.</u> Additionally, cross-examination is not confined to identical details testified to in chief, but it extends to all matters that may supplement, contradict, rebut, or make clearer facts testified to in chief.  <u>See Geralds v. State</u>, 674 So. 2d 96 (Fla. 1996).

Upon reviewing the transcript and acknowledging the wide leeway allowed in cross-examination, the Court finds that counsel was not deficient for failing to object to the State's methods of cross-examination of Defendant.  As such, Defendant is not entitled to relief upon issue 7.

<u>Issue 9</u>

<u>Counsel Was Ineffective for Not Filing a Motion To Suppress
Evidence Made Outside the Scope of Right to Counsel Clause.</u>

In support of this issue, Defendant alleges that counsel should have filed a motion to suppress evidence when counsel learned through investigation directed by Defendant that Robert Graves would regularly read other prisoners' legal paperwork and then later testify against them based upon knowledge gathered therein.   Defendant argues that this information would have showed that Graves was in fact acting as a State agent.

The Court finds no merit to this allegation.  Defendant has failed to affirmatively prove prejudice as he has failed to demonstrate that the motion to suppress Graves' testimony would have succeeded and would have changed the outcome of the proceeding.  As such, Defendant is not entitled to relief upon issue 9.

<u>Issue 13</u>

<u>Counsel Failed to Object and/or Move for Mistrial Upon Presentation
by the Prosecutor as an Adverse Witness Against the Accused.</u>

In support of this issue, Defendant alleges that several times during the course of Defendant's cross-examination by the prosecutor, the prosecutor assumed the role of a witness and presented evidence to the jury consisting of other things, namely, hearsay within hearsay and testimony from persons not present at trial, thereby depriving Defendant [sic] the right of confrontation.  Defendant asserts that defense counsel was ineffective for failure to object.

The first instance Defendant refers to is testimony the prosecutor gave supposedly from an investigator from the prosecutor's office, consisting of statements pertaining to arrangements between the prosecutor's office and Graves.  Defendant maintains that this is hearsay within hearsay.  Here, Defendant fails to cite to a particular point in the trial transcript where the prosecutor's alleged wrongdoing took place.  Since the burden is on the defendant to provide specificity and he fails to do so, Defendant is not entitled to relief upon this claim.

Defendant also refers to the time the prosecutor gave impermissible testimony when she related to the jury what custodial arrangements she had made for a witness from the county jail.  Defendant cites to page 168 of the trial transcript.

A review of the trial transcript reveals the following:

Q: Well, you also indicated that Mr. Graves was moved out of his cell because he was in a fight?

A: That's correct.

Q: Well, Mr. Newman, do you know -- do you happen to know that it was at the State Attorney's request that Mr. Graves was moved from his cell because of the threat to him?

A: MS. FORD. Objection, Judge.  There's no way he could know that.

THE COURT: Overruled.

THE WITNESS: Okay.  You're saying that it was the State Attorney's position to authorize this black gentleman to fight this --

MS. FORD: May we approach?

THE COURT: Approach the bench.

-13-

(A bench conference was had.)

MS. FORD: Judge, unless Ms. Stanley puts somebody on the stand to say they had someone call the jail to have Mr. Graves moved, this is simply argumentative.

THE COURT: Overruled.  He could have answered either yes or no. That's the answer to the question.

MS. FORD: I would argue it's an improper question, Judge.

THE COURT: Okay.

(The bench conference ended.)

(See Trial Transcript, pp. 168-169, attached).

Defendant's allegation is without merit where, as here, he maintains that counsel failed to object to the State's improper comments.  On the contrary, the transcript reveals that counsel did object in open court and during a bench conference as to the State's comments. (See above).  As such, Defendant's allegation is without merit.

Defendant also alleges that the prosecutor made herself an adverse witness to the prejudice of Defendant when she delivered evidence from Detective Jerry Herren's deposition and police reports.  Upon review of the transcript, the Court finds that this allegation lacks any merit.   The prosecutor is allowed wide leeway in cross-examination, especially in impeaching a witness. Robertson, 780 So. 2d at 106.  As such, the Court does not find that the prosecutor improperly injected her own personal beliefs during the cross-examination of Defendant.  As such, Defendant's allegation is without merit.

Defendant also alleges that the prosecution went so far as to accuse Defendant of having Graves beat up as being a snitch.  A review of the trial transcript reveals the following:

Q: Isn't it true, Mr. Newman, that that black gentlemen [sic] only beat up Mr. Graves after you let everybody know that he was a snitch?

MS. FORD: Objection.

THE COURT: Overruled.

-14-

(See trial Transcript, p.. 168, attached.)

Again, the record reflects that counsel did object to the State's line of questioning.  The Court finds that counsel was not ineffective.  As such, Defendant's allegation is without merit.

Based upon the foregoing, Defendant is not entitled to relief upon issue 13.

## Issue 14

## Counsel Failed To Challenge Kaleidoscope [sic] of Improper Statements, Opening Statements and Closing Arguments and Concealment of Same by Omitting from Record Thereby Depriving Defendant [of] Fair Trial and Appellate Review.

In support of this issue, Defendant alleges that in opening and closing statements the State injected inflammatory statements, implanting in the minds of jurors that Defendant was part of the crime problem in the City of Tampa.  Also, Defendant alleges that the prosecutor injected her personal beliefs in closing.  All of this occurred without defense counsel objecting.

If allegations of ineffective assistance of counsel are not adequately detailed, further inquiry by the trial court is not required.  Howard v. State, 462 So. 2d 31 (Fla. 1st DCA 1984).  Here, Defendant has failed to adequately detail his allegations.  As such, Defendant is not entitled to relief upon issue 14.

## Issue 15

## Fundamental Error or Direct Violation of Due Process.  Prosecution's Deliberate Act of Withholding Evidence , I.E. Brady violation (R. Crim. P. 3.220 (b)(1)(ix).

In support of this ground Defendant alleges that during the course of the trial, the prosecution entered into evidence a photograph of the Defendant taken at the time of arrest.   Defendant argues that this photograph was very incriminating and prejudicial in nature as it displayed Defendant standing highlighted in front of his car wearing a pair of jeans with the zipper wide open.  Defendant alleges that the evidence was [sic] not disclosed to him was the inventory sheet of items uncovered in his car which had been impounded as evidence.  Defendant points out that his jeans with wallet and driver's license were listed on the inventory sheet,

-15-

together with the fact that the items were wet and had to be placed in a drying room to be removed after drying.  Defendant maintains that this information would have gone to corroborate testimony that he had in fact wet himself and he had to change his pants, which explains why his zipper was in the wide-open position.

Defendant must prove the following to substantiate his <u>Brady</u> claim: (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.  <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Here, Defendant fails to prove that the outcome of the proceedings would have been different if the inventory sheet were disclosed to him.  The inventory sheet would have provided the fact that the items recovered from Defendant, including his jeans, had to be dried;  however, the Court does not find that this fact would have changed the outcome of the proceedings.  As such, Defendant is not entitled to relief upon issue 15.

## Issue 16

### Counsel's Failure To Conduct Adequate Pre-Trial Investigation, Relative to Witness that Could Have Presented Favorable Testimony for the Defendant.

Defendant alleges that counsel was ineffective for failing to call Corey Baker as a witness who would have testified that he started the fight at the jail.  Defendant maintains that Corey Baker's testimony concerning Graves' fight with him not only would have refuted the prosecutions's accusations but would have also went [sic] to attack the credibility and veracity of the testimony given by Graves.

Upon review of the allegation, the Court does not find that counsel's failure to call Corey Baker was prejudicial.  Defendant has failed to affirmatively prove that if counsel would have [sic] called Baker, then the outcome of the proceedings would have been different.   As such, Defendant is not entitled to relief upon issue 16.

## Issue 18

### Counsel Ineffective for Not Addressing Court at Sentencing Phase

### that Multiple Verdicts of Multiple Perpetrators
### Violates Prohibition Against Double Jeopardy.

In support of this ground Defendant alleges that counsel was ineffective for not addressing the Court when double jeopardy clause protects defendants in a criminal proceeding against multiple punishments or repeated prosecutions of the same offense.

Upon review of the sentencing hearing transcript, the Court finds that counsel did address double jeopardy concerns with the Court:

> MS. FORD:  Thank you, Judge.  Briefly, as well, Judge, I would point out that although I can't find any reason under the law why Ms. Stanley can't score Mr. Newman three times for the sexual penetration, I'd simply ask the Court to consider that Mr. Newman, although he was found guilty of sexual battery, it was three counts of multiple perpetrators and that his actions were actually only one sexual battery.   But because there were two other folks involved, he is, under the law, responsible for those as well.

(See Transcript from June 4, 1998, pp. 194-195, attached).

The Court finds that counsel did address this issue of the three counts of the sexual battery, and asked for leniency.   However, since Defendant was the principal in the crime, as counsel alluded to, it was not illegal for the Court to assess Defendant multiple counts of sexual battery based upon the co-defendants' crimes as well. As such, Defendant is not entitled to relief upon issue 18.

### Issue 19

### Sentence Illegal as Jury Was Not Informed of Facts in Which
### Court Exceeded the Statutory Maximum, Consistent with Recent United
### States Supreme Court Ruling, I.E., Victim Injury Points.

In support of this allegation, Defendant maintains that he was assessed 240 points on his guideline scoresheet, a judge determination, which permitted Defendant to be sentenced to life imprisonment on a second-degree felony with a fifteen year statutory maximum.

**Defendant relies upon <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (2000), in arguing that his sentence was enhanced illegally without the issue going before the jury. The United States Supreme Court held that it is unconstitutional for the legislature to remove from the jury the assessment of facts, other than the fact of prior convictions, that increase the prescribed range penalties to which a criminal defendant is exposed, and such facts must be established by proof beyond reasonable doubt.**

**Here, the jury was instructed on Florida Statute section 794 (multiple perpetrators), and the jury did find Defendant guilty beyond a reasonable doubt of sexual battery (multiple perpetrators) on counts one, two, and three. (See Jury Instructions, p. 72; Trial Transcript, p. 179-180, attached). As such Defendant's <u>Apprendi</u> claim is without merit as the jury, after being instructed on Florida Statute section 794, found Defendant guilty of Sexual Battery (multiple perpetrators). As such Defendant is not entitled to relief upon issue 19.**

**It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Post Conviction Relief Memorandum [sic] are hereby DENIED, IN PART, as Defendant is not entitled to relief upon issues 2, 4, 6, 7, 9, 13, 14, 15, 16, 18, 19. The Office of the State Attorney SHALL RESPOND to issues 1, 3, 8, 10, 11, 12, and 17within thirty (30) days of this Order.**

The State filed a response and requested an evidentiary hearing (Ex1/V2/R514). The evidentiary hearing was held on April 10, 2003. Newman was represented by an assistant public defender (Ex1/V3/R521-591). On September 4, 2003, the state trial court entered a "Final Order Denying Motion for Post Conviction Relief." (Ex1/V3-4/R592-803).

**The final order reads, in pertinent part:**

**Defendant claims ineffective assistance of counsel. A claim of ineffective assistance of counsel has two components. <u>See Strickland v. Washington</u>, 466 U.S. 668, 686-87 (1984). First a defendant must show that counsel's performance was deficient, which requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>See id.</u> Second, a defendant must show that the deficient performance prejudiced the defense, which requires showing the errors were so serious as to deprive the defendant of a fair trial. <u>See id.</u>**

At the stage in post conviction proceedings when there has been no evidentiary hearing the Court must accept any factual allegation as true to the extent it is not conclusively refused by the record.  See Freedman v. State, 761 So. 2d 1055, 1061 (Fla. 2000). Then, the court must then [sic] examine the overall claim to determine if it is merely conclusory.  See Kennedy v. State, 547 So. 2d 912, 913 (Fla. 1989).  A conclusory claim is one that does not clearly identify specific acts or omission that allegedly fell below effective assistance standards, or does not include clear allegations describing how such acts or omissions resulted in prejudice. See id. If a defendant's claim is not conclusory, the Court must next determine whether it meets the burden of establishing a prima facie case for relief.  This burden is met when the claim is (1) legally sufficient and (2) is not conclusively refuted by the documents in the case file or record that can be cited in or attached to the order denying relief.  See Freedman at 1061. When a defendant has met the burden for establishing a prima facie case for relief, an evidentiary hearing is presumed necessary, and the burden is then upon the State to demonstrate that the motion is legally flawed or that the record conclusively demonstrates no entitlement to relief.  See Gaskin v. State, 737 So. 2d 509, 516 (Fla. 1999).

In Issue I, Defendant claims counsel was ineffective for failing to subpoena Detective Strickland.  According to Defendant there were inconsistencies in the Victim's trial testimony and counsel should have used the Detective to impeach the Victim.  Defendant maintains that the Victim - Ms. Reed - initially told Detective Strickland all the sexual acts occurred inside of Defendant's car, but at trial Ms. Reed testified the acts happened on the beach and not inside the car.  Defendant also claims he was physically examined by the Detective and the physical exam revealed no physical marks or blood.  At trial, however, Ms. Reed testified she had bitten Defendant's penis (the implication being there should have been physical marks).

At the evidentiary hearing, counsel -- Ms. Kathleen Ford -- testified she made the tactical decision not to call Detective Strickland.  Counsel indicated that rather than impeaching the Victim's testimony, Detective Strickland would have "bolstered Ms. Reed's trial statement."  Moreover, had she called the Detective, he would have had the opportunity to explain away any inconsistencies in the Victim's testimony.[1] (See transcript dated April 10, 2003, pp. 33-37, 61-62, attached).

[1]Counsel mentioned that after meeting with the Detective she had the impression the Detective was sympathetic toward the Victim.  Counsel was concerned the Detective's testimony would benefit the Victim and harm Defendant.

-19-

The Court finds that counsel made the tactical decision not to subpoena Detective Strickland. "Judicial scrutiny of counsel's performance must be highly deferential. . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;   that is, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy.  Strickland, 466 U.S. at 689 [citations omitted].  Since decisions concerning trial strategy or tactics ultimately rests with counsel, "tactical or strategic decisions of counsel do not justify post conviction relief on the grounds of ineffective assistance of counsel." Mazard v. State, 649 So. 2d 255 (Fla. 3d DCA 1995); see also Medina v. State, 6734 So. 2d 298 (Fla. 1990) (holding that counsel cannot be ineffective for strategic decisions made during a trial.  As such no relief is warranted on this issue.

In issue 3, Defendant claims counsel was ineffective for failing to introduce a photograph into evidence.  Specifically, that counsel failed to introduce a photograph taken by the Tampa Police Department which allegedly would have shown it was impossible to have sex in Defendant's car.  Defendant claims the photograph, in conjunction with Detective Strickland's testimony, would have impeached the Victim's version of events.

However, the record refutes this claim.  First, State's Exhibit 7 was a photograph that showed  the inside of Defendant's car. Second, counsel testified she used the photograph while questioning one of the investigating officers regarding the amount of "stuff" in the backseat of Defendant's car.  (See transcript dated April 10, 2003, p. 55, attached). Moreover, counsel stated she showed the photo to Defendant. (See transcript dated April 10, 2003, p. 42, attached).

Defendant is claiming that had the jury considered such a photograph it would have made a difference in the outcome of the trial.  The record shows, however, that a photograph of the inside of Defendant's car was introduced at trial and the jury heard testimony regarding the amount of "stuff" in the backseat.  Therefore, Defendant is unable to show he was prejudiced by counsel's performance.  That is, Defendant fails to satisfy prong one of Strickland.  As such no relief is warranted on this issue.

In issue 8, Defendant claims counsel was ineffective for failing to discredit the testimony of Robert Graves.  Specifically, that counsel failed to question Graves regarding his vendetta toward Defendant.  Defendant alleges that Graves testified against him in retaliation for Defendant refusing to assist Graves in another unrelated matter.

At the evidentiary hearing, however, counsel testified she did attempt to impeach Graves' testimony by pointing out inconsistencies between his deposition and trial testimony.  Moreover, counsel stated that Defendant testified at trial regarding Graves' grudge toward him. (See transcript dated April 10, 2003, pp. 44-47, 57, 62-66, attached).

Since the jury heard testimony regarding the strained relationship between Defendant and Graves, and the jury had the opportunity to weigh the credibility of Graves' testimony, Defendant fails to satisfy prong one of <u>Strickland</u> in that he is unable to show he was prejudiced by counsel's performance.  As such, no relief is warrant on this issue.

In a related claim, Defendant claims <u>in issue 10</u> that counsel was ineffective for failing to subpoena Deputy Hunter from the county jail. Defendant alleges that the Deputy could have discredited the testimony of Graves.  According to Defendant, Deputy Hunter could have shed light on Graves' habit of reading other prisoners' paperwork and then testifying against them at trial.

This claim, however, does not satisfy prong one of <u>Strickland</u>.  At the evidentiary hearing counsel testified she did not personally contact the Deputy  because her investigator had already determined Deputy Hunter's testimony would not benefit Defendant.   In fact, if would do just the opposite. Rather than corroborating Defendant's version of events, Deputy Hunter would have testified that Graves came to him and told him Defendant confessed to raping the victim.  Deputy Hunter also would have testified that Graves was a jailhouse snitch who squealed on other inmates. (See transcript dated April 10, 2003, pp. 47-49, 62-64, attached).

Since counsel made the decision not to subpoena Deputy Hunter based on the assessment of her investigator, Defendant is unable to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  <u>See Strickland</u>, 466 at 686-87.  Moreover, decisions concerning trial strategy or tactics ultimately rests [sic] with counsel, "tactical or strategic decisions of counsel do not justify post conviction relief on the grounds of ineffective assistance of counsel."  <u>Mazard v. State</u>, 649 So. 2d 255 (Fla. 3d DCA 1994); see also <u>Medina v. State</u>, 673 So. 2d 298 (Fla. 1090) (holding that counsel cannot be ineffective for strategic decisions made during a trial).  As such no relief is warranted on this issue.

<u>In issue 11</u>, Defendant claims counsel was ineffective for failing to impeach the Victim's trial testimony.   Defendant argues there were a number of inconsistencies in her testimony.   For example, Defendant

alleges the Victim initially told police the sexual acts took place in the car; however, at trial she testified the sexual acts occurred on the beach. Defendant alleges he was prejudiced by counsel's failure to impeach the Victim.

This claim does not satisfy prong one of <u>Strickland</u>. At the hearing, counsel testified she did attempt to impeach the Victim's testimony by point out inconsistencies between her deposition and trial testimony. Apparently, there was not much to work with because counsel noted the victim's version of events remained very consistent from her initial statements to the police, her deposition testimony, and finally during her trial testimony. (See transcript dated April 10, 2003, pp. 36-43, attached). Since the record refuted Defendant's allegations -- counsel testified she did attempt to impeach the victim's trial testimony -- Defendant is unable to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>See</u> <u>Strickland</u>, 466 U.S. at 686-87. As such no relief is warranted on this issue.

<u>In issue 12</u>, Defendant claims counsel was ineffective for failing to impeach the Victim's boyfriend -- Daniel Richie -- who testified he watched Defendant rape his girlfriend. Defendant claims, however, that the Victim herself contradicted the boyfriend's testimony. The boyfriend testified he saw actual penis/vaginal penetration, but The victim claims she only had oral sex with Defendant.

At the hearing, counsel testified she did attempt to impeach the boyfriend with his inconsistent statements. Counsel indicated the boyfriend acknowledged making inconsistent statements. Counsel was forced to terminate the impeachment line of questions, however, because the boyfriend started to rehabilitate himself as he successfully explained the inconsistences. But counsel added she was satisfied she had sufficiently impeached the boyfriend with the prior inconsistent statements. (See transcript dated April 10, 2003, pp. 43-44, attached).

Since counsel's evidentiary hearing testimony adequately refutes the allegation in issue 12, Defendant fails to satisfy prong one of <u>Strickland</u>. As such, no relief is warranted on this issue.

<u>In issue 17</u>, Defendant claims he was prejudiced by the cumulative effect of counsel's fundamental errors. However, since the Court has denied all of Defendant's claims, he cannot show how he was prejudiced by counsel's representation. Therefore, Defendant fails to satisfy his burden under <u>Strickland</u>. As such no relief is warranted on this issue.

**It is therefore ORDERED AND ADJUDGED that Defendant's Motion
for Post Conviction Relief is hereby DENIED.**

Newman appealed (Ex1/V4/R804), raising three grounds: (1) the state trial court erred in summarily denying issues 4, 18, and 19 where the attached record did not conclusively refute the claims; (2) the state trial court erred in applying the law with regard to the facts of the claims of ineffective assistance of counsel when the state trial court summarily denied claims 6, 7, 9, 14, 15, and 16; and, (3) the state trial court erred in denying claims 1, 3, 8, 11, 12, and 17 after the evidentiary hearing, because the findings of the state trial court were not supported by substantial and competent evidence. (Ex.7/Briefs filed on appeal of denial of postconviction motion).

On September 22, 2004, the state district court of appeal, in <u>Newman v. State</u>, 892 So.2d 1030 (Fla. 2d DCA 2004), per curiam affirmed the denial of postconviction relief. (Ex.8). Newman signed the original federal petition in this case on February 13, 2005.  He is proceeding on his Court-ordered amended petition (Doc. No. 5) signed March 5, 2005.  The petition is timely.

STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). Indeed, it is not enough

that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002).

INEFFECTIVE ASSISTANCE OF COUNSEL

A claim of ineffective assistance of counsel is difficult to prove.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)(en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984) governs an ineffective assistance of counsel claim.

> The law regarding ineffective assistance of counsel claims is well-settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial who result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F. 3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U. S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant make an insufficient showing on one.") Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.  "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." Strickland, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

If counsel erred in representing Newman, the error, "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. Newman must demonstrate that the error prejudiced the defense to compel a finding of ineffective assistance of counsel. Strickland, 466 U.S. at 692. Newman can meet this burden only by showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. Newman cannot meet this burden by simply showing that, in hindsight, the avenue chosen by counsel proves ineffective.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial in fact, worked adequately.

-25-

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord, Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So omissions are inevitable . . . . [T]he issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled.")(en banc)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983)(counsel has no duty to raise frivolous claims.)

The Florida courts concluded that decisions made by Newman's counsel were reasonable strategic or tactical decisions and Newman could not meet the deficient performance or prejudice prong of the Strickland test. This deference to reasonable strategic or tactical decisions is a correct application of Strickland.  See Mincey v. Head, 206 F.3d 1106, 1143 (11th Cir. 2000)("We must respect the counsel's tactics if they seem reasonable considering all the circumstances." (quoting Strickland)).

Newman has not shown, in any of his ineffective assistance of trial or appellate counsel claims, by clear and convincing evidence that the state courts' application of Strickland (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

DISCUSSION

A review of the record demonstrates that, for the following reasons, Newman's petition for writ of habeas corpus must be **DENIED**.

Ground One

-26-

Newman claims that trial counsel rendered ineffective assistance when she failed to call Corporal Gene Strickland to contradict testimony presented at trial. This claim corresponds to ground one in Newman's Rule 3.850 motion.  The state trial court denied this claim after a Rule 3.850 evidentiary hearing, stating:

> Defendant claims counsel was ineffective for failing to subpoena Detective Strickland. According to Defendant there were inconsistencies in the Victim's trial testimony and counsel should have used the Detective to impeach the Victim. Defendant maintains that the Victim - Ms. Reed - initially told Detective Strickland all the sexual acts occurred inside of Defendant's car, but at trial Ms. Reed testified the acts happened on the beach and not inside the car. . . .

> At the evidentiary hearing, counsel -- Ms. Kathleen Ford -- testified she made the tactical decision not to call Detective Strickland.  Counsel indicated that rather than impeaching the Victim's testimony, Detective Strickland would have "bolstered Ms. Reed's trial statement."  Moreover, had she called the Detective, he would have had the opportunity to explain away any inconsistencies in the Victim's testimony.[1] (See transcript dated April 10, 2003, pp. 33-37, 61-62, attached).

> > [1]Counsel mentioned that after meeting with the Detective she had the impression the Detective was sympathetic toward the Victim.  Counsel was concerned the Detective's testimony would benefit the Victim and harm Defendant.

> The Court finds that counsel made the tactical decision not to subpoena Detective Strickland. . . . As such no relief is warranted on this issue.

The state trial court did not err in denying relief on this claim.  The primary issues were whether the sexual assaults took place and who committed the assaults, not whether the assaults took place inside the car or a short distance away on the beach. (See ground nine below.)  Newman has not shown, by clear and convincing evidence, that the state trial court unreasonably applied Strickland when it determined that defense counsel's strategy not to call Detective Strickland was within the broad range of discretion afforded to counsel for the defense. Had defense counsel called Detective Strickland to impeach Reed on her inconsistent

statements about where the assaults took place, the impeachment would not have caused the outcome of the proceedings to be different because the issue of where the sexual assaults took place was only a collateral matter in this case.

Ground one does not warrant habeas corpus relief.

Ground Two

Newman claims trial counsel was ineffective for failing to enter into evidence a photograph of the interior of the automobile where the sexual acts took place because the photograph allegedly would have shown that the assaults could not have taken place inside the vehicle. This claim corresponds to ground three in the Rule 3.850 motion. The state trial court denied relief on this claim after a Rule 3.850 evidentiary hearing. The denial of relief was per curiam affirmed by the state district court of appeal. The state courts did not err in denying this claim.

At trial, State's Exhibit 7 was, in fact, a photograph showing the inside of Newman's car. Defense counsel showed the photograph to Newman at trial. Defense counsel used the photograph, at trial, to question an investigating officer regarding the amount of "stuff" in the backseat. The photograph was introduced into evidence and the jury heard testimony regarding the amount of "stuff" in the backseat.

Newman has not shown, by clear and convincing evidence, that the state courts' denial of this claim was an unreasonable application of Strickland. Therefore, Newman has not met his burden of showing that defense counsel was ineffective for failing to introduce into evidence the photograph of the back seat of Newman's vehicle because the photograph was, in fact, entered into evidence.

Ground two does not warrant habeas corpus relief.

-28-

Ground Three

Newman argues that trial counsel was ineffective for failing to object to prosecutorial misconduct when the prosecutor presented perjured testimony at trial. Newman alleges that the perjured testimony consisted of Reed and Richie's trial testimony that was inconsistent with their statements given to police or given at deposition.  This claim corresponds to ground four in the Rule 3.850 motion  Ground four was summarily denied by the state trial court. The state trial court did not err in denying this claim because there was no perjured testimony to which defense counsel could object.

Inconsistencies in a witness' statements go to the weight of the evidence. The defense brings the inconsistencies to the jury's attention by impeaching the witness.  Inconsistencies do not prevent the witness' testifying.  The record shows that defense counsel did confront Reed and Richie with their inconsistent statements.

Because there was no perjured testimony, and because defense counsel confronted Reed and Richie with their inconsistent statements, Newman can not show that the state courts' denial of this claim was an unreasonable application of Strickland. Newman has not met his burden of showing that defense counsel was ineffective for failing to "object to prosecutorial misconduct when the prosecutor presented perjured testimony at trial."

Ground three does not warrant habeas corpus relief.

Ground Four

Newman alleges that counsel rendered ineffective assistance for failing to object to a "discovery violation."  This claim corresponds to ground six, instance 2, in the Rule 3.850 motion.  Ground six, instance 2, was summarily denied by the state trial court:

**In instance 2, Defendant alleges that a discovery violation occurred when upon cross-examination of the State's witness, defense counsel questioned the witness about his observation of Defendant raping his girlfriend, in which the witness responded that the prosecutor told him not to say that. Defendant argues that this statement demonstrates collusion on the State's part, but also shows a substantial and deliberate change of testimony that constitutes a discovery violation.**

**Upon review of this allegation, the Court finds that this does not constitute a wilful discovery violation. As such, Defendant is not entitled to relief upon instance 2.**

The denial was per curiam affirmed by the state district court of appeal.

The state trial court was correct in denying this claim. The prosecutor's telling Richie not to use the term "rape" in testifying to what he saw was not a discovery violation. The question of whether what Richie saw constituted rape or sexual battery is an ultimate question of fact for the jury to determine.

Newman has not shown, by clear and convincing evidence, that the state courts' denial of this claim was an unreasonable application of <u>Strickland</u>. Therefore, Newman has not met his burden of showing that defense counsel was ineffective for failing to object to an alleged discovery violation.

Ground four does not warrant habeas corpus relief.

Ground Five

Newman alleges that trial counsel rendered ineffective assistance when counsel failed to object to the prosecutor's "testifying" as to statements made by Detective Herren regarding Newman's state of mind at the time of his arrest, thereby denying Newman the right to confront Detective Herren. This claim corresponds to ground seven in the Rule 3.850 motion. The state

trial court summarily denied ground seven, and the denial was per curiam affirmed by the state district court of appeal. The state trial court did not err in its ruling.

After Newman testified on direct examination, the prosecutor, during cross-examination, questioned Newman about statements Newman had made to made to Detective Herren, an acceptable impeachment technique. (Ex1/Supp/T166-167).  By doing so, the prosecutor was not "testifying" or presenting  "unsworn testimony from a non-present witness."

Newman has not shown, by clear and convincing evidence, that the state courts' denial of this claim was an unreasonable application of <u>Strickland</u>. Therefore, Newman has not met his burden of showing that defense counsel was ineffective for failing "to object to the prosecutor's testifying as to statements made by Detective Herren regarding Newman's state of mind at the time of Newman's arrest."

Ground five does not warrant habeas corpus relief.

Ground Six

Newman argues that trial counsel rendered ineffective assistance for failing to present evidence to discredit the testimony of Robert Graves, a "jail house" informant. This claim corresponds to ground eight in Newman's Rule 3.850 motion. The state trial court denied relief on this claim after a Rule 3.850 evidentiary hearing.  The state district court of appeal per curiam affirmed the denial of relief. (See also grounds seven and sixteen below).

The state trial court did not err in its ruling on this issue. Trial counsel did attempt to impeach Graves at trial by pointing out inconsistencies between his deposition testimony and his trial testimony.  Also, Newman testified at trial about a "grudge"  Graves had towards him. The jury had the opportunity to weigh the credibility of both Graves and Newman.

Newman has not shown, by clear and convincing evidence, that the state courts' denial of this claim was an unreasonable application of <u>Strickland</u>. Therefore, Newman has not met his burden of showing that defense counsel was ineffective for failing to present evidence to discredit the testimony of Robert Graves.

Ground six does not warrant habeas corpus relief.

Ground Seven

Newman alleges that counsel rendered ineffective assistance for failing to move to suppress Robert Graves' testimony based on his being a government agent. Graves read other prisoners' legal paperwork and then later testified against the prisoner based on the knowledge Graves gained from reading the documents. This claim corresponds to ground nine in the Rule 3.850 motion. The state trial court summarily denied relief on this claim, and the state district court of appeal per curiam affirmed the denial of relief. The state trial court did not err in its ruling.

The state trial court held:

**Defendant alleges that counsel should have filed a motion to suppress evidence when counsel learned through investigation directed by Defendant that Robert Graves would regularly read other prisoners' legal paperwork and then later testify against them based upon knowledge gathered therein. Defendant argues that this information would have showed that Graves was in fact acting as a State agent.**

**The Court finds no merit to this allegation. Defendant has failed to affirmatively prove prejudice as he has failed to demonstrate that the motion to suppress Graves' testimony would have succeeded and would have changed the outcome of the proceeding. As such, Defendant is not entitled to relief upon issue 9.**

At trial, counsel attacked Graves' testimony by bringing out the fact that Graves had possession of the police report of the incident and had reviewed it overnight (Ex1/V4/R778).

Indeed, Graves testified at trial that Newman gave him a copy of the police report and asked him to look it over to see if he could find any loopholes (Ex1/Supp/T127). Newman also testified at trial that he had given Graves a copy of the police report in his case (Ex1/Supp/T157).  The jury was aware that Graves was a jailhouse snitch, and was aware that Graves could have been testifying not from what Newman told him but from what he [Graves] learned from the police report.

Newman has not shown that trial counsel was ineffective, under the Strickland standard, for failing to move to suppress the "evidence" that Graves read prisoners' documents. The motion would not have been successful because the fact that Graves was a snitch goes to the weight and not the admissibility of the evidence, and because there was no evidence that Graves was acting as an agent of the State.  Counsel cannot be ineffective for failing to file a motion that would not have been successful.

Ground seven does not warrant habeas corpus relief.

Ground Eight

Newman alleges that trial counsel was ineffective for failing to investigate and call Deputy Hunter as a defense witness to discredit the testimony of Robert Graves. This claim corresponds to ground ten in the Rule 3.850 motion.  In the Rule 3.850 motion, Newman alleged that trial counsel had learned from Deputy Hunter that it was Robert Graves' regular practice to read other prisoners' paperwork and then testify against the prisoner. This allegation, if true, would have discredited Graves' testimony at trial (Ex1/V1/R181).

The state trial court made a finding after the Rule 3.850 evidentiary hearing that the claim did not satisfy the performance prong of Strickland for ineffectiveness (Ex1/V3/R596). This Court agrees.  Trial counsel testified she did not personally contact Deputy Hunter

because her investigator had already determined that Hunter's testimony would not benefit Newman and would, in fact, have had the opposite effect because Hunter would have testified that Graves was a jailhouse snitch who contacted him and told him that Newman confessed to raping Reed. (Ex1/V3/596). (See testimony of trial counsel from evidentiary hearing at Ex1/V3/R566-568;581-583).

Newman has not shown, by clear and convincing evidence, that the state courts' denial of this claim was an unreasonable application of <u>Strickland</u>. Therefore, Newman has not met his burden of showing that defense counsel was ineffective for failing to call Deputy Hunter as a defense witness.

Ground eight does not warrant habeas corpus relief.

Ground Nine

Newman argues that trial counsel was ineffective for failing to adequately cross-examine and impeach Reed at trial as to where the sexual assaults took place. This claim corresponds to ground eleven in the Rule 3.850 motion.  After the Rule 3.850 evidentiary hearing, the state trial court found that trial counsel was not ineffective in her cross-examination, and denied relief on this claim. (Ex1/V3/R597). The state trial court did not err in the denial of relief. The question of whether the sexual assaults took place inside the car or a short distance away from the car on the sand is a collateral matter; the primary issues were whether the sexual assaults occurred and who committed them, not whether they occurred inside the car or on the beach.

Reed was cross examined about her prior convictions for a felony and for a crime involving dishonesty (Ex1/Supp/T15-16). She was also impeached on prior inconsistent statements about how much she had to drink at the beach; the happenings at the beach with the couple in the boat; and the sequence of the events during the assaults. (Ex1/Supp/T40-

-34-

42;47-48;49-50). Trial counsel's failure to present impeachment evidence regarding where the assaults took place did not constitute ineffective assistance. State v. Riechmann, 777 So. 2d 342, 356 (Fla. 2000).

Ground nine does not warrant habeas corpus relief because Newman has not met his burden of demonstrating that counsel was ineffective under the Strickland standard for failing to adequately cross-examine and impeach Reed.

## Ground Ten

Newman alleges that trial counsel was ineffective for failing to impeach state witness Richie through adequate cross-examination as to what he actually saw Newman do to Reed. This claim corresponds to ground twelve in the Rule 3.850 motion.

After the Rule 3.850 evidentiary hearing, the state trial court found that counsel's testimony at the hearing adequately refuted the allegation that counsel did not adequately cross-examine Richie and found that that Newman had failed to satisfy the Strickland performance prong. This Court agrees.

Counsel did cross-examine Richie about what he saw Newman do to Reed and Richie acknowledged at trial that he had made inconsistent statements as to what he actually observed Newman do (Ex1/Supp/T78-79).

Newman failed to establish prejudice under Strickland because Richie acknowledged making inconsistent statements. Newman has not shown, by clear and convincing evidence, that the state courts' denial of this claim was an unreasonable application of Strickland. Therefore, Newman has not met his burden of showing that defense counsel was ineffective for failing to impeach Richie through adequate cross-examination as to what he actually saw Newman do to Reed.

Ground ten does not warrant habeas corpus relief.

Ground Eleven

Newman argues that trial counsel was ineffective for failing to object to improper statements made by the prosecutor during his opening statement and closing argument. This claim corresponds to ground fourteen in the Rule 3.850 motion. Newman alleged in his Rule 3.850 motion that trial counsel should have objected to the prosecutor's stating in both opening statement and closing argument that Newman was part of the crime problem/element in the city of Tampa, and one of the underlying reasons for the climbing rate of criminal activity in the community. Also Newman argued that defense counsel should have objected to the prosecutor's making statements that bolstered the credibility of the state's witnesses by asking, "Why would these people lie?" (Ex1/V1/R193-196).

The state trial court summarily denied this claim finding that the allegations were not adequately detailed and that further inquiry by the state trial court was not required, citing as authority Howard v. State, 462 So.2d 31 (Fla. 1st DCA 1984) (Ex1/V1/R299). This Court agrees that Newman did not adequately set out his claim. In Howard, the state district court of appeal held that:

> A movant alleging ineffective assistance of counsel must fulfill these requirements: 1) the specific omission or overt act upon which the claim is based must be detailed in the appropriate pleading; 2) the defendant must show that this specific omission or overt act was a substantive and serious deficiency measurably below that of competent counsel; and 3) the defendant must show that this specific, serious deficiency, when considered under the circumstances of the individual case was substantial enough to demonstrate a prejudice to the defendant to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings. Knight v. State, 394 So.2d 997, 1001 (Fla.1981). Failure to meet these standards will support the summary denial of a Rule 3.850 motion alleging ineffective assistance of counsel. See Moore v. State, 431 So.2d 713 (Fla. 1st DCA 1983).

-36-

Newman did not show that counsel's alleged deficiency in not objecting to the prosecutor's statements during his opening statement and closing argument "was substantial enough to demonstrate a prejudice to the defendant to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings."  Howard, 462 So. 2d at 32.

Furthermore, Newman's argument that the prosecutor improperly bolstered the credibility of his witnesses by arguing to the jury,  "Why would these people lie?"  has no merit.  The prosecutor was not vouching for the credibility of the state  witnesses, but was asking the jury to determine the witnesses' credibility.

Newman has not met the Strickland standard to establish ineffective assistance of counsel for counsel's failing to object to improper prosecutorial statements and argument.

Ground eleven does not warrant habeas corpus relief.

Ground Twelve

Newman argues that the State deliberately withheld evidence of an inventory sheet. The inventory sheet was important, according to Newman, because at trial, a photograph was introduced into evidence showing Newman wearing a pair of jeans with the zipper open. He alleges that the inventory sheet would have lessened the impact of the photograph on the jury, and would have corroborated his testimony that he changed his pants because he had urinated in the ones he had been wearing, and that he had not had time to zip the pants into which he changed before the photograph was taken.

This claim corresponds to ground fifteen in the Rule 3.850 motion.  The state trial court summarily denied this claim because Newman failed to prove that the outcome of the trial would have been different if the inventory sheet had been disclosed. (Ex1/V1/R300). Newman is, in essence, alleging a <u>Brady</u> violation.

> There are three components of a true <u>Brady</u> violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] the evidence must have been suppressed by the state, either willfully or inadvertently; and [3] prejudice must have ensued. <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 144 L.Ed.2d 286, 199 S.Ct. 1936 (1999).
>
> Where evidence has been withheld, the ultimate test under <u>Brady</u> becomes whether the disclosed information is of such nature and weight that "confidence in the outcome of the trial is undermined to the extent that there is a reasonable probability that had the information been disclosed to the defendant, the result of the proceeding would have been different." <u>Young v. State</u>, 739 So.2d 533, 559 (Fla. 1999).

<u>Jennings v. State</u>, 782 So. 2d 853, 856 (Fla. 2001).

There was no <u>Brady</u> violation because, as the state trial court found, the inventory sheet would not have changed the outcome of the proceedings. The inventory sheet is not favorable to Newman; it is merely corroborating evidence as to a collateral matter. Because the introduction of the inventory sheet would not have changed the outcome of the proceedings, Newman cannot show that there was a <u>Brady</u> violation.

Ground twelve does not warrant habeas corpus relief.

Ground Thirteen

Newman argues that trial counsel was ineffective in failing to call Corey Baker as a defense witness to explain why Robert Graves had been removed from Newman's cell and to refute the prosecutor's comment that Graves was removed because of threats Newman made. This claim corresponds to ground sixteen in the Rule 3.850 motion.

-38-

The state trial court summarily denied this claim finding that Newman failed to establish prejudice because Newman failed to show that the outcome of the trial would have been different had Baker been called (Ex1/V1/R301). This Court agrees. The question of why Graves was removed from the cell that he shared with Newman was a collateral matter not material to Newman's guilt or innocence.  Baker's testimony would have been cumulative impeachment evidence and Newman has not shown that the outcome of the trial would have been different if Baker had testified. Newman has not refuted, by clear and convincing evidence, the state trial court's finding that Newman was not prejudiced by trial counsel's not calling Baker to testify. Newman has not met his burden under <u>Strickland</u>.

Ground thirteen does not warrant habeas corpus relief.

### Ground Fourteen

Newman argues that the cumulative effect of trial counsel's alleged errors entitles Newman to a new trial. This claim corresponds to ground seventeen in the Rule 3.850 motion. The state trial court determined that since the court had denied all of Newman's underlying claims of ineffective assistance of counsel, Newman had failed to establish that he was prejudiced by counsel's representation (Ex1/V3/R598). This Court agrees.

Ground fourteen does not warrant habeas corpus relief.

### Ground Fifteen

Newman argues that trial counsel was ineffective when she failed to argue a double jeopardy violation for three convictions of sexual battery by multiple perpetrators. This claim corresponds to ground eighteen in the Rule 3.850 motion.  The state trial court correctly found that there was no double jeopardy violation and therefore counsel could not be deemed ineffective if she failed to make such an argument.

Both the United States and Florida constitutions protect a criminal defendant from being twice put in jeopardy for the same offense. U.S. CONST. amend. V; Art. I, § 9, Fla. Const. The double jeopardy provisions confer three separate guarantees: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." See Brown v. Ohio, 432 U.S. 161, 165 (1977); North Carolina v. Pearce, 395 U.S. 711, 717 (1969); Jackson v. State, 682 So. 2d 1227, (Fla. 4th DCA 1996).

Newman was not "twice put in jeopardy for the same offense" because he was convicted of three counts of sexual battery by multiple perpetrators.  The sexual batteries were separate acts.  They were separate acts because, in count one Goodwin was charged with penetration and/or union of Reed's vagina by Goodwin's penis; in count two Girdler was charged with penetration and/or union of Reed's vagina by Girdler's penis; and in count three, Newman was charged with penetration and/or union with Reed's mouth by Newman's penis.  Newman was convicted as a principal in each count. Newman cannot show that there was a double jeopardy violation in his case, and he has failed to demonstrate, under Strickland that defense counsel was ineffective for failing to argue a double jeopardy violation.

Ground fifteen does not warrant habeas corpus relief.

Ground Sixteen

Newman argues that the trial court erred in computing the guidelines by scoring 240 points for sexual penetration [80 points for penetration x 3 counts = 240] without a specific finding by a jury (Ex1/V1/R50). This claim corresponds to ground nineteen in the Rule. 3.850 motion.  Newman argues that the state trial court erred in scoring victim injury points for sexual

penetration because there was no specific finding of sexual contact made by the jury as required by Apprendi v. New Jersey, 530 U.S. 466 (2000).

This argument is without legal merit because Newman was originally convicted and sentenced in June 1998 (Ex1/V1/R55- 68) prior to Apprendi. Although the original sentence was reversed on direct appeal by the state district court of appeal in July 1999 in Newman v. State, 738 So.2d 981 (Fla. 2d DCA 1999), and Newman was resentenced in October 1999, that sentence was affirmed by the state district court of appeal in Newman v. State, 782 So.2d 462 (Fla. 2d DCA 2001). The Apprendi decision was rendered in June of 2000.  Apprendi is not retroactive to cases on collateral review. Varela v. United States, 400 F.3d 864 (11th Cir. 2005); Hughes v. State, 901 So.2d 837 (Fla. 2005).  The state trial court did not err in allegedly sentencing Newman without a specific finding by the jury.

Ground sixteen does not warrant federal habeas corpus relief.

### Grounds Seventeen, Eighteen and Nineteen

Newman raises three grounds of ineffective assistance of appellate counsel. These claims correspond to issues one, two, and four of Newman's state habeas corpus petition. (Ex5).

### STANDARD FOR INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The standard is the same for ineffective assistance of appellate counsel as it is for ineffective assistance of trial counsel. Duest v. Singletary, 967 F.2d 472, 477, n.4 (11th Cir. 1992).

### Ground Seventeen

Newman argues that appellate counsel was ineffective when counsel failed to supplement the record on appeal with a transcript of voir dire and of the opening statements

and closing arguments. This claim corresponds to ground one of the state habeas corpus petition. (Ex5/p.3-4)  The state district court of appeal did not err in denying this claim.  The fact that trial counsel did not ask that a transcript of voir dire or of the opening statements and closing arguments be included in the record on direct appeal does not warrant relief.

Newman does not allege what, if any error took place during voir dire or opening statements or closing arguments[6] that were preserved by trial counsel and that would have resulted in a new trial if argued on appeal.  Newman has failed to demonstrate that appellate counsel was ineffective for failing to supplement the record on appeal with a transcript of voir dire and of the opening statements and closing arguments.

Ground seventeen does not warrant relief.

## Ground Eighteen

Newman argues that appellate counsel was ineffective for failing to challenge the trial court's restriction of the cross-examination of Reed and Richie regarding 1) their requests for money for their expenses and  2) their past criminal activities. This claim corresponds to ground two of the state habeas corpus petition (Ex5/p.4-5).  The state district court of appeal did not err in denying this claim because the claim has no merit. Reed and Richie were entitled to travel expenses for appearing in court from out of state. Such a request does not undercut the credibility of a witness for the state or for the defense.

Newman has failed to show that appellate counsel was deficient for failing to raise on direct appeal that the state trial court restricted cross examination of Reed and Richie

---

[6] The only specific allegation concerning alleged improper prosecutor argument was raised in ground eleven, and since trial counsel, as alleged by Newman, did not object to this argument, the matter was not preserved for review on direct appeal.

-42-

concerning their requests for money based on their request for travel expenses to appear in court, or that Newman was prejudiced as a result of "not being able to bring forth this information."

Ground eighteen does not warrant habeas corpus relief.

### Ground Nineteen

Newman argues that appellate counsel was ineffective for not arguing on appeal that the state trial court erred when, over the defense's objection, the court admitted a photograph of the walker that was used to beat Richie. This claim corresponds to ground four of the state habeas corpus petition. (Ex5/p.7-8). The state trial court did not err in denying this claim.

At trial, Reed testified that she saw Goodwin beating Richie with Richie's walker when Newman hit her in the face and pulled her from the car by her throat (Ex1/Supp/T25). Reed identified the photograph of the walker (State Exhibit 8 at trial) as it appeared after Richie was beaten with the walker (Ex1/Supp/T36-37). Richie testified at trial that Goodwin beat him with the walker and Richie identified the picture of the walker. Defense counsel knew that testimony about Richie's being beaten with the walker was going to presented (Ex1/Supp/T10).

Defense counsel argued that the photograph was not relevant because Newman was not charged with committing the aggravated battery on Richie and that the photograph was only offered to inflame the jury (Ex1/Supp/T9). In response, the prosecutor argued that the aggravated battery occurred during the same criminal episode as the sexual batteries and the photograph of the smashed walker went to Reed's state of mind in that it demonstrated what was in her mind as to what could happen to her if she resisted.  Additionally, the prosecutor argued that the State had to prove that the sexual batteries occurred without Reed's consent

(Ex1/Supp/T9-10). The photograph demonstrated the violence that was used in the criminal episode.

Appellate counsel did not render ineffective assistance for not arguing on appeal that the state trial court erred when the court admitted the photograph of the walker. The photograph was relevant to Reed's state of mind at the time of the sexual batteries.  Finally, Newman cannot show any prejudice, because the other evidence of guilt at trial was  substantial.

Ground nineteen does not warrant habeas corpus relief.

Accordingly, the Court orders:

1. That Newman's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Newman and to close this case.

2. IT IS FURTHER ORDERED that Newman is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Newman "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Newman has not made the requisite showing in these circumstances.

3. Finally, because Newman is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on May 25, 2006.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
James M. Newman